IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEITH OLSSON, by and through )
MINDI OLSSON, guardian and )
conservator for Keith Olsson, )
)
                Plaintiff, )
)
v. ) Case No. 10-2465-CM-KGG
)
AARON GROSS and )
THE SYGMA NETWORK, INC., )
)
                Defendants. )
_____ )

## MEMORANDUM AND ORDER

Presently before the Court is Plaintiff's "Motion for Leave to Designate Expert Witnesses in the Present Action" and supporting memorandum. (Docs. 20, 21.) Therein, Plaintiff seeks leave to designate as experts two individuals who assisted with – and were specifically identified in – the Rule 26(a) report from Plaintiff's forensic epidemiologist (accident reconstruction expert). For the reasons discussed herein, this portion of Plaintiff's motion is **GRANTED**. Plaintiff also seeks leave to name additional medical expert(s) relating to a head injury Defendant Aaron Gross sustained as a child. This portion of Plaintiff's motion is **DENIED** as more fully set forth below.

# BACKGROUND

Plaintiff initially filed this matter in the District Court of Wyandotte County, Kansas, on September 25, 2008, seeking damages for personal injuries resulting from an automobile collision in which his vehicle was allegedly hit by a truck driven by Defendant Gross, an employee of Defendant Sygma. Soon thereafter, the action was removed by Defendants to the United States District Court for the District for the District of Kansas, as Case No. 08-2567-CM (hereinafter referred to as "the initial action").

**A.  Facts Relating to Plaintiff's Accident Reconstruction Expert(s).**

On July 1, 2009, Plaintiff disclosed expert witnesses in accordance with the Scheduling Order in effect in the initial action. (*See* Doc. 21-2; Doc. 21-3.) One of experts disclosed by Plaintiff at that time was a forensic epidemiologist named Dr. Michael Freeman. (*See* Doc. 21-2, at 7.) In Dr. Freeman's timely served expert report, he clearly states that

> in order to illustrate the most probable scenario that is consistent with the vehicle and scene evidence I have commissioned a reconstruction and animation of scenarios describing the subject collision and Mr. Olsson's fall from the overpass, performed under my direction by Clackamas County Sheriff's Deputy Ward Bruington (for the crash reconstruction) and Oregon State Police animator Marian Nemeth. The animations consist of the most probable and an alternate scenario of the crash, shown from different perspectives, as

> well as how Mr. Olsson's fall from the bridge was most likely to occur, with two alternative scenarios.

(Doc. 21-3, at 3.) The deposition of Dr. Freeman commenced on October 20, 2009.

Defense counsel questioned Dr. Freeman extensively regarding the roles Nemeth and Bruington played in compiling the information and opinions that comprise his report. (*See* Doc. 22,a t 3-4.) Dr. Freeman's deposition was not completed, but was continued by agreement of the parties.

On November 3, 2009, Plaintiff served his Second Supplemental Fed.R.Civ.P. 26(a)(1) Disclosures. (Doc. 22-2, at 2; *see also* Case No. 08-2567, Doc. 145.) According to Defendants, Nemeth and Bruington were, for the first time, identified as fact witnesses in this disclosure. (Doc. 22, at 5.) A third supplemental disclosure was served by Plaintiff on December 10, 2009, and also included Nemeth and Bruington. (Doc. 22-3; *see also* Case No. 08-2567, Doc. 153.)

According to Plaintiff, at some point after he disclosed his expert witnesses, Ms. Nemeth's computer "suffered a negative event." (Doc. 21, at 5.) Plaintiff's counsel became aware of this after the first portion of Dr. Freeman's deposition was taken. (*Id*.) This ultimately lead to Plaintiff moving for

dismissal of the initial action, without prejudice, "so that the lost information could be rediscovered or recreated." (*Id*.; *see also* Case No. 08-2567, Doc. 158.)

In opposing Plaintiff's motion for voluntary dismissal, Defendants requested, in part, that Nemeth and Bruington "shall remain fact witnesses as designated by plaintiff in his Second Supplemental Fed.R.Civ.P. 26(a)(1) Disclosures." (Case No. 08-2567, Doc. 163, at 18-19.) Plaintiff's request for dismissal without prejudice was granted by District Judge Carlos Murguia on March 10, 2010. (Case No. 08-2567, Doc. 168.) One of the conditions entered by the District Court was that all discovery conducted in the original action would carry over to the re-filed action and no witnesses previously deposed would be redeposed without a showing of substantial need. There was no reference to Defendants' request regarding the designations of Nemeth and Bruington. (*See generally, id*.)

Plaintiff refiled his action on August 23, 2010. (Doc. 1.) On December 2, 2010, without a correlating deadline, Plaintiff filed his "Notice of Service of Rule 26(a)(1) Disclosures." (Doc. 13; Doc. 22-6.) Therein, Plaintiff identified Nemeth and Bruington under the heading "plaintiff's retained expert witnesses and/or their teams." (Doc. 22-6, at 11-12.) Dr. Freeman was the third expert

identified while Nemeth and Bruington were listed directly under him with subheadings "3A" and "3B." (*Id.*, at 12.)

A Scheduling Order was entered in the present matter on December 15, 2010. (Doc. 16.) The order stated that the deadline for Plaintiff to disclose experts pursuant to Fed.R.Civ.P. 26(a)(2) had passed before case 08-2567 was dismissed. (*Id.*, at 4.) Even so, Plaintiff was given a deadline of January 10, 2011 to file a motion to "reset that deadline."[1] (*Id.*) The present motion was filed on that deadline. (Doc. 20.) Defendants were given an expert deadline of May 16, 2011. (Doc. 16, at 4.) The discovery deadline was set for August 15, 2011. (*Id.*, at 3.)

**B.     Facts Relating to Medical Evidence**.

Plaintiff contends that the production of the medical history of individually-named Defendant Gross "was a point of contention between the parties." (Doc. 21, at 11.) He received a HIPAA compliant authorization for Gross's medical records on June 24, 2009 – approximately one week before Plaintiff's July 1, 2009, expert witness deadline in the initial action. Although Plaintiff contends he has requested Gross's medical records from "multiple

---

[1] As such, the Court will employ the "good cause" standard of Fed.R.Civ.P. 6(b) rather than the excusable neglect standard for motions made after the expiration of a deadline.

providers," he has received the documents from only one facility. (Doc. 21, at 11.)

## DISCUSSION

Disclosure of expert testimony is controlled by Fed.R.Civ.P. 26(a)(2). The rule provides, in relevant part, that "a party **must** disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702 703, or 705." Fed.R.Civ.P. 26(a)(2)(A) (emphasis added). The rule also states that an expert disclosure

> must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (iv) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B).

Fed.R.Civ.P. 6(b) provides:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

(Emphasis added.) A showing of "good cause" requires a proffer of the reasons for the failure to meet the deadline. ***Burton v. R.J. Reynolds Tobacco Co.***, 203 F.R.D. 624, 629 (D. Kan. 2001) (citations omitted).

> The reason for the 'good cause' requirement for modification of a court's scheduling order is that such orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner. The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved.

***Rouse v. Farmers State Bank of Jewell, Iowa***, 866 F.Supp. 1191, 1198 (N.D. Iowa 1994), (citing ***Public Citizen v. Liggett Group, Inc.***, 858 F.2d 775, 790

(1st Cir. 1988) *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989)).

In this motion, Plaintiff requests leave to 1) designate two previously disclosed individuals as expert witnesses and 2) identify new experts relating to Defendant Gross's prior head injury and its potential impact on his fitness to operate a truck. Both categories of requested experts will be discussed in turn.

**A.    Individuals Assisting with Accident Reconstruction**.

Plaintiff contends that "there has been no error in the disclosure of Dr. Freeman and his team, technical or otherwise." (Doc. 21, at, 9.) However, Plaintiff anticipates Defendants are attempting to "set up the plaintiff for a summary judgment motion or a *Daubert* motion further along in litigation on what they perceive as a technical error." (*Id.*) As such, Plaintiff files the present motion "to quell the defendants' perceived deficiencies with plaintiff's initial expert disclosures." (*Id.*, at 10.)

Defendants argue that "Plaintiff had every opportunity to disclose these witnesses as Rule 26(a)(2) expert witnesses, but intentionally chose not to do so." Plaintiff basically contends that although Bruington and Nemeth assisted Plaintiff's forensic epidemiologist, they are not themselves experts and did not

need to be disclosed independently. Plaintiff reiterates that he is not trying to change the roles of these two individuals. Rather, he is merely attempting to "ensure that this action is decided upon its merits rather than some technicality manufactured by the defendants." (*Id*.)

The line between lay testimony and expert testimony can become blurred in situations where a lay witness seeks to testify as to an opinion or inference rather than to mere fact matters. The blurring of this line has been the topic of several appellate opinions. *See e.g., **Asplundh Mfg. Div. v. Benton Harbor Engineering**,* 57 F.3d 1190, 1194-1203 (3rd Cir. 1995). *See also  **Randolph v. Collectramatic, Inc.**,* 590 F.2d 844, 847-48 (10th Cir. 1979) (noting that the general limitation on lay witnesses testifying on matters beyond the realm of common experience might not apply when the lay witness has special experience on a topic requiring special expertise); ***Montag v. Honda Motor Co., Ltd.,*** 75 F.3d 1414, 1421 (10th Cir. 1996) ("In certain circumstances, a lay witness with specialized knowledge may be allowed to testify as to topics typically reserved for expert witnesses."); ***Weese v. Schukman,*** 98 F.3d 542, 550 (10th Cir. 1996).

As a result of confusion in this area, Fed. R. Evid. 701 was amended effective December 1, 2000. *See* 192 F.R.D. at 416-18. The purpose of the

amendment was, in part, to eliminate the possibility that the reliability requirements set forth in Rule 702 (on expert testimony) will be evaded through the simple expedient of proffering an expert in lay witness clothing. 192 F.R.D. at 416. Therefore, a lay witness can testify in the form of opinions or inferences which are:

> a. rationally based on the perception of the witness; b. helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; <u>and c. not based on scientific, technical, or other specialized knowledge within the scope of rule 702</u>.

*Id*. (emphasis in original).

The amended rule does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*. While a single witness may provide both lay and expert testimony in a single case, the rule makes clear that any part of a witness' testimony that is based on scientific, technical, or other specialized knowledge within the scope of Rule 702, is governed by the standards of Rule 702 <u>and the disclosure requirements of the rules of civil procedure</u>, *i.e.,* Fed. R. Civ. P. 26(a)(2). 192 F.R.D. at 416-417.

The Advisory Committee Notes discuss the difference between lay and expert testimony. "The distinction between lay and expert witness testimony is

that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning that can be mastered only by specialists in the field.'"  Advisory Committee Notes to Fed. R. Evid. 701, 1992 F.R.D. at 417, citing *State v. Brown,* 836 S.W.2d 530, 549 (1992).

In the context of these standards, the Court is persuaded by Defendants' argument that the roles of Bruington and Nemeth in this case are that of retained experts whose opinions rely on scientific expertise.  The Court cannot agree, however, that these individuals should be excluded from providing testimony or opinions in this case.

It is uncontroverted that both Bruington and Nemeth were identified in Plaintiff's timely submitted initial expert report from Dr. Michael Freeman dated June 30, 2009, and produced to Defendants on July 1, 2009.  (Doc. 21-3, at 3; Doc. 21-2.)  Plaintiff was clearly not attempting to hide the involvement of these individuals.  As such, the Court sees no prejudice to Defendants in allowing Plaintiff to now individually designate these two individuals as experts.  It is undisputed that Defendants have yet to disclose their accident reconstruction expert, have not completed Dr. Freemen's deposition, and have yet to depose either Mr. Bruington or Ms. Nemeth.  (*See* Doc. 21, at 10.)

As stated above, however, in order to amend the Scheduling Order to allow Plaintiff to designate these experts, Plaintiff must establish "good cause" for his failure to previously identify them. Fed.R.Civ.P. 6(b). As also stated above, the individuals were clearly identified as performing services under Dr. Freeman's direction in the preparation of his expert report. (Doc. 21-3, at 3.) As such, the Court is satisfied that Plaintiff's good faith belief that he had sufficiently disclosed these individuals and the roles they played more than adequately fulfills the "good cause" requirement.[2] This portion of Plaintiff's motion is, therefore, **GRANTED**.

**B.   Experts Resulting From Newly Discovered Medical Evidence**.

Plaintiff states that he continues to attempt to compile records relating to a head injury Gross sustained as a child. Plaintiff contends this information is relevant because it could support the opinion of his retained trucking expert that Defendant Sygma was negligent "to hire and allow Mr. Gross to operate their CMV without further investigation and inquiry as to the status of his head injury." (Doc. 21, at 11-12; Doc. 21-7, at 14-15.) Plaintiff also contends that he "was unapprised of the contents of Defendant Gross's medical records at the

---

[2] This also would have established the "excusable neglect" standard pursuant to Fed.R.Civ.P. 6(a)(1)(B).

time of initially disclosing expert witnesses [and] he now has good cause to warrant a re-disclosure of expert testimony on this issue," which may require the disclosure of additional experts "to discuss the nature and extent of Defendant Gross's condition." (Doc. 21, at 12.) In addition, Plaintiff requests leave to conduct a Rule 35 independent medical examination of Defendant Gross. (*Id*., at 12.)

Defendants respond that evidence regarding Gross's childhood head injury is not "newly discovered evidence" because Plaintiff was first made aware of it when Defendants served their Second Supplemental Disclosures on April 24, 2009. (Doc. 22, at 10.) Further, Plaintiff deposed Gross about the issue on May 5, 2009. (*Id*., at 10-11.) At that time, Plaintiff's counsel admitted to having documents from a lawsuit that was filed on Gross's behalf as a result of that prior injury. (*Id*.)

Defendants argue that additional experts relevant to this injury are unnecessary because Plaintiff has already designated his trucking expert, discussed above, who stated opinions on Gross's head injury and Plaintiff's negligent hiring claim. Defendants point out that Plaintiff failed to request an extension of time "to designate experts based on the perceived need to discover the medical records," and also chose not to move for additional expert(s) on

these issues before moving for voluntary dismissal of the initial case. (*Id*.) Finally, Defendants argue that Plaintiff should not be allowed to designate experts on this issue because Plaintiff's negligent hiring claim is "futile." (*Id*., at 12-15.)

Simply stated, Plaintiff has not established "good cause" for this requested modification of the Scheduling Order. While the Court sympathizes with Plaintiff's difficulty compiling Gross's medical records, the Court agrees with Defendants that the existence of the injury is not newly discovered evidence. It is undisputed that Plaintiff was aware of Defendant Gross's prior head injury no later than May 5, 2009 – approximately two months before the expert deadline in the original case and almost eight months before Plaintiff moved to dismiss the original action.

Plaintiff contends that despite sending records requests to "multiple providers," he has received Gross's records from only one medical facility since receiving the HIPAA release. Plaintiff does not, however, state how long ago he requested, or when he received, the documents from this lone provider. Considering he received the HIPAA release on June 24, 2009 – approximately six months before he moved to dismiss the initial action – it is quite possible

that Plaintiff could have moved to request additional experts on these issues months ago.

Further, regardless of when Plaintiff requested or received the one set of records, there is no indication that he made any effort to compile the records using the subpoena mechanisms available under Fed.R.Civ.P. 45 despite having ample time to do so. Regardless of whether the contents of the records "would likely conflict with the deposition testimony of defendant Gross and cast doubt on his ability to operate a CMV" (Doc. 21, at 11), the Court sees no justification to order the requested relief given Plaintiff's failure attempt to compile the documents by alternative means. This portion of Plaintiff's motion, including Plaintiff's request for a Rule 35 independent medical examination, is, therefore, **DENIED**.[3] Even though the Court is not allowing additional experts on this issue, Plaintiff is reminded of his duty to supplement his expert disclosures pursuant to Fed.R.Civ.P. 26(e)(2).

**IT IS THEREFORE ORDERED** that Plaintiff's "Motion for Leave to Designate Expert Witnesses in the Present Action" (Doc. 20) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

---

[3] In reaching this conclusion, the Court finds it unnecessary to discuss Defendants' argument as to the futility of Plaintiff's negligent hiring claim and offers no opinion regarding the same.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 5th day of April, 2011.

                                           s/ KENNETH G. GALE
                                           KENNETH G. GALE
                                           U.S. MAGISTRATE JUDGE